May it please the Court. My name is Imran Mirza, and I represent the petitioner, the key fan in these proceedings. Your Honors, we will be alleging that there are basically three arguments on our oral arguments. Number one, we would argue that the petitioner's statements that were taken from her at the airport and at the deferred inspection should be suppressed because she had become the focal point of a criminal investigation. Secondly, we would argue that she has not admitted the essential elements of the crime of aggravated assault in Texas. And third, we would allege that the government failed in its burden to establish that self-defense was not a motive. Unlike in other states, in Texas, self-defense is something that the prosecution must disprove rather than the defendant is distinguishable from a decision that was rendered by this Court in Posco Gein v. Radcliffe. First of all, the regulation that we are citing regarding the suppression of the statements is 8 CFR 292.5B. This deals with the situation where a person is entering the United States through primary and secondary inspection. The respondents are correct that a person's not entitled to counsel when you're coming in and you're seeking admission to the United States. However, this regulation makes clear the instances where a person who normally would not be entitled to counsel is entitled to counsel. And it specifically states that nothing in this paragraph shall be construed to provide any applicant for admission in either primary or secondary the right to representation unless the applicant for admission has become the focus of a criminal investigation. Was she being investigated for a criminal offense at that time? Your Honor, we would contend, the petitioner would contend that she had, the inspecting officers realized that there was an arrest and that there was not a conviction, but they were unaware that the statute of limitations had run. And so the inspecting officers should have been on notice at that point that any statements that they were taking from her might violate her right against self-incrimination under the Fifth Amendment. So what crime was being investigated at that point? There was no crime being investigated at that point, Your Honor, because this is such an old, aggravated assault case that the prosecution, the statute of limitations had run and the prosecution had been dismissed on this case. How is the regulation triggered if there's no criminal investigation at that point? And how does the regulation take effect at that point? Well, Your Honor, we would contend that the service, when they began the questioning, I mean, in hindsight, it appears that she should not have been read her rights, but what we're saying is that at the time that she was being questioned, they were unaware that there was nothing pending and that they were taking statements from her that might have violated her rights. You mean that might have been useful by somebody in Texas, but it would have been of absolutely no use to the service in the prosecution of a crime? That's correct. Okay. So your argument is that the officer should have realized that something that she said could be used by somebody else to prosecute this crime, even though they had no interest whatsoever in those statements for the purposes of prosecuting her for crimes? That's correct. Okay. There are things which the service might have an interest in prosecuting for can pursue criminally. That's correct. This wouldn't have been one of those. This would not have been one of them. Entry without inspection is a criminal offense that sort of involves immigration, but this would not have been one of them. Our second argument, which is really the thrust of why we're here today, is whether the petitioner has admitted freely, voluntarily, and unequivocally the essential elements of a crime involving moral turpitude. Do you admit that she's admitted them all except for the defense of self-defense? Is that what you're saying? Actually, we've argued, number one, that she's not admitted the essential elements of the offense, and our second argument, or I guess in this instance it would have been my third argument, is that the self-defense was not something that she was admitted. She was persistently questioned until she got the answers, the officer got the answers that he wanted. When he first asked her in the administrative record, I would point the court to, and of course I don't, when she was first asked whether she had shot this person, her initial answer was no, and what ended up happening is that the officer continued to question her until he got the answers that he wanted. But the answer no was not correct, was it? The answer no was not correct, and that's why he continued to follow up, and it was not correct. But the question really here today is not so much whether she committed the crime or whether she didn't commit the crime. In this instance, the question is whether she actually freely and voluntarily admitted all the essential elements of the crime. But didn't the IJA find that she had admitted all of these elements in hearings? The immigration judge did find that she did, and we would contend that the immigration But moving to our third argument, if we want to... Admitted she shot the guy, right? She did shoot the guy. Shot him in the back or shot at him three or four times? Well, she shot several times in the air, and one of the rounds did hit the person, Mr. Lee, I believe was his name, in the shoulder. And so there is an... Back turned at the time? There is some question about that because her statements were not exactly consistent. In the first statement, she mentions that she may have shot him in the back. In the other statements, she indicates that she started shooting when he had his hands to her throat. And so it does appear that she did fire a weapon, no doubt about that. It also appears that the person was hit in the shoulder, which brings us to our third argument, which is self-defense. What she has been maintaining since the moment she landed at Honolulu's airport was that she acted in self-defense. In Texas, self-defense is an absolute defense. It is also something that the prosecution must prove. Now, this court has recently held... Must disprove, I suppose. Must disprove, that's correct. I'm sorry, I misspoke. The prosecutor... I'll help you out. Well, thank you, Judge. I need all the help I can get. In Pat Scogin v. Radcliffe, this court held that the essential elements are those elements that the prosecutor must prove. So does prove equal disprove in your view? Your Honor, I believe that it does because under Texas case law, Muhammad v. Texas, if a defendant raises the issue of self-defense, it is the burden of the prosecutor to disprove beyond a reasonable doubt whether that self-defense was a valid defense. Does that thereby become an element of the offense that the prosecution must prove? Well, according to this court in Pat Scogin, what this court has held is that the essential elements, as used in this context as far as admitting the essential elements of a crime, are constituent parts of the offense which must be proved by the prosecution in every case to sustain a conviction under a given statute. What case authority do you have to support your argument that the burden to disprove an affirmative defense equates to the burden of proof of an element? What case are you relying upon to support that argument? Your Honor, I'm relying upon Muhammad v. Texas, and it's cited by the Respondent's Counsel in their brief as well, 9-1-1 Southwest 2nd, 823. I understand that that case says that self-defense is a defense, but does that make it an element of the crime that the prosecution must prove? There's a difference, in my view, between an element of the offense that the prosecution must prove and an affirmative defense that the prosecution must rebut. So I'm asking you, what case do you have that equates those two? It was my understanding that that's what Muhammad v. Texas stated, was that the burden was on the prosecution to disprove beyond a reasonable doubt. The same standard that they would have to establish the elements on, they have the burden to prove by the same burden that self-defense was not. Counsel, let me follow up on that just a little bit. Does that mean, then, that if the prosecution comes up and says, here we have Ms. Tran, she shot Mr. Lee, it was premeditated, she had the gun, she shoots him in the back, that you may get up and move for acquittal because they have failed to show that it was self-defense, even if you've not said a word about self-defense? No, Your Honor. What I'm saying here is that when she raised the issue of self-defense, and we support it. But that's when she raises the issue of self-defense. Why now does the service have to prove, why do you get to allege the defense of self-defense at this point if they've shown the elements of the crime? Because she has to admit all the essential elements of a crime. And what they have to do before that admission is considered valid is they have to read to her the elements of the crime. And they have to read to her, did you do this, did you do this? And in Texas, if she said, I did this in self-defense, then an additional element of disproving self-defense would be there. And that's what they should have done here is they should have said, at this point, now that you've raised self-defense, let us read to you the elements of self-defense and let her admit or deny. If Ms. Traum were alleging a defense of insanity, which she would bear the burden of proving in Texas, would she be able to assert that defense here, and would it be the government's burden then to prove that she was sane at the time? Unfortunately, she would not be able to. If it was her burden to prove it under the Pascogeen case that this court recently ruled, that she would not be able to get around this. Because in that instance, that would be on all fours with Pascogeen. In Pascogeen, the affirmative defense was the burden of Pascogeen. And what happened was is this court held that since the burden was on the defendant to prove that, then that's not considered an essential element. We don't need to look at it. All we look at and how we define essential elements are things that the government must prove in each and every case. Thank you, Counsel. Good morning, Your Honors. My name is Carol Federighi. I represent Respondent Attorney General Gonzalez in this matter. Your Honor, because Ms. Tran had the burden to establish admissibility in this case, she had a very heavy burden of proof before the immigration judge. She had to show under the statute, she had to show that she was clearly and beyond a doubt entitled to be admitted. And then this Court's review is also very heavy with regard to Ms. Tran's case. The Court must find that the immigration judge's determination is conclusive unless it is manifestly contrary to law. So Ms. Tran has a very heavy burden in this case to prevail. The record shows that she has not met these stringent standards here. Did the immigration judge decide that the self-defense defense was not a valid defense? That was part of his decision. I mean, he held that, first, the self-defense is not an essential element of the crime. So the fact that it came into play did not mean that she had not admitted to the essential elements of the crime. And then the judge held that she had not, even if it was an essential element, she had not established that it applied here. The fact that she admitted them did not establish the self-defense defense. Because she admitted that she took the gun with her. She'd already had argument with this guy. She didn't normally carry a gun with her. That day she picked up the gun and put it in her purse and went to meet him. And under Texas law, as set out in Administrative Record 439 to 430, those acts vitiate the self-defense defense. If you go to confront someone with a weapon, you're not really acting in self-defense. So what effect, if any, did the strip search have on the voluntary nature of her statements? It did not have any effect on the voluntary nature of her statements. She has to show, in order to show that it was undue coercion, that her will was overborne by the circumstances. What was the point of the strip search? It's a routine, as the officer explained, it's a routine when they bring someone to the airport to search them for evidence that might pertain to the admissibility issues, as well as for the security of the people at the airport. And in this case, given that she had previously, she had admitted that she had previously used a gun in a criminal act, they were particularly concerned to ensure their security by searching. So the strip search is necessary to find a gun? Again, it's their discretion as to what they need to do to ensure their security, as well as to look for any evidence. For those of us who fly frequently, I guess that's not very reassuring to know that you have to do a strip search in order to prevent somebody from having a gun at an airport. Well, they were looking for more than just a gun, any sort of weapon or anything. Well, she was, they suspected two things, one that she might be engaging in prostitution and the other that she committed this crime in Texas. It seems like there might have been something else that they could have done to assure themselves of those crimes. They said this was routine, that they normally did this when they brought someone to the airport. They did have two women do the search of her. She was allowed, it happened right when she got to the airport, they did the search of her, then they let her put her clothes back on, took her to another room to interview her. There's no evidence that they did the strip search just for the purpose of intimidating her or, you know, forcing her to. That's a pretty traumatic occurrence. They did say she was scared and frightened, but she did not indicate in any way that her will was overborne, such that the statements that she then made were somehow involuntary. And, in fact, I don't really think the court even needs to read the issue of whether the search was unduly coercive or whether the statement should not have been admitted, because she basically admitted to sufficient facts at the hearing to support the IG's finding that she was not admissible. She admitted at the hearing that she shot a gun recklessly in the direction of the victim, and that's sufficient to meet the definition of aggravated assault under Texas law. What did she say at the hearing with regard to the self-defense issue? Well, again, she argued that she was afraid of this guy, that they'd had arguments before, and then at the time that they, she said the day they confronted each other, he had started to strangle her and she got scared. Was that the day before or the day she shot him? Well, originally, her first statement, she said that he had tried to strangle her the day before the confrontation. At the second statement that she made and then at the hearing, she said it occurred just five minutes before she started shooting at him. So there is a little bit of a contradiction there. But even if you take the latter statement as the true account, she said that she, you know, he was strangling her, she got scared, and she started shooting the gun, and she claimed she shot in the air. But this aggravated assault requires only a mens rea of recklessness, and to shoot a gun when you're in a confrontation with someone is reckless. That's reckless intent to, or reckless actions to harm somebody. And as I said before, the self-defense defense doesn't apply here. When she knew that she was going to have a confrontation with someone and she brought the gun with her, under Texas law, that those circumstances do not allow for a defense of self-defense. Because she could have, and in fact, in the Mohammed case, they rejected the self-defense argument because they said he could have left after he first hit the victim. He could have left her because she was knocked into a corner, so he could have left at that point. In this case, she could have avoided the confrontation entirely. So under the case law of Mohammed, the self-defense defense doesn't even apply here. In any event, self-defense is not an essential element of the crime. The essential elements are those that need to be proven by the prosecution in every case. Let me ask the same question I asked Mr. Mirza. What if she, since she was not actually convicted in Texas, she's never had an opportunity to put on a self-defense, and if she had had a different defense, insanity, let's say, she would never have had an opportunity to do that. So what's somebody supposed to do in a case like this? The service is saying, well, she's admitted to the essential elements of the crime. Well, that may be true, but what if there's an affirmative defense? And what if there's a defense as to which she bears the burden? The statute, again, Congress wrote the statute to make someone inadmissible who's admitted to the essential elements of a crime. So we would argue that in that case, though— That works well when a state's actually undertaken the prosecution, and we've had a successful prosecution, but— But in that case, there's three parts to that statute. In that case, she would have fallen under one of the earlier parts, which is if you have a conviction for a crime of moral turpitude. So Congress clearly wanted to get at a crime— This also means that if Texas had tried this to a conclusion, and the jury had come back and said, not guilty by reason of insanity, but she had admitted to the essential elements, that you could still throw her out. That's correct. And that's a decision Congress made as to the category of people that it wanted to exclude from the United States. Again, it's not a criminal sanction we're imposing here on her. We're just saying these are the kinds of people we're not going to admit to the United States. And Congress made the decision clearly in that statute to make it just broader than people who were convicted of particular crimes, but even those who had not been convicted but yet admitted the essential elements. And Congress did not put in any phrase saying, except to the extent that they had a valid defense to the crime. So I think, though, we'd have to look at each particular case and let the board rule on it in the first instance, but there doesn't appear to be any sort of provision for cases where there's affirmative defenses. Is the immigration judge required to consider this under a standard of beyond a reasonable doubt, or does the immigration judge just consider it as a preponderance? Well, the burden she had to show was that she was clearly and beyond a doubt entitled to be admitted. I don't—that's not beyond a reasonable doubt, that's beyond a doubt. I don't know how the two standards compare, but as far as looking at whether she had— if self-defense was an essential element of the crime that had to be disproved by the government, the standard would be only whether she had shown clearly and beyond a doubt that the government had failed to disprove that, if that's not too confusing a formulation. In any event, it's a very high standard that she had to meet to show that she was admissible. And in this case, the immigration judge did not—his decision that she did not show self-defense and that she had admitted to the essential elements of the crime was—did not meet the clearly and beyond a doubt standard for— I mean, now I'm getting confused. She did not show clearly and beyond a doubt that she did not admit to the essential elements of the crime, and that was the standard that she had to meet. And in this Court's review, this Court must uphold the immigration judge's determination as conclusive unless it's manifestly contrary to law. No further questions. Thank you, Ms. Federighi. Mr. Mears, your time has expired. I'll give you 60 seconds if there's something that needs to be responded to. Your Honor, basically, I think the most important thing to take away from what we're doing today here is that she is not on trial. She was not on trial for aggravated assault in front of the immigration court. She is not on trial for aggravated assault here. The only issue is whether she has freely, voluntarily, and unequivocally admitted the essential elements of a crime. According to board case law, in order for a person to do that, a person has to be read prior to the statement the essential elements of a crime. Those elements have to be read to her. She must freely, unequivocally answer those questions, yes. Even if she answers them no incorrectly, it's still not a free and voluntary admission. So it's not really whether, you know, the evidence proves this or the evidence proves that. The question of law is purely did she freely and voluntarily admit each and every one of the elements that was read to her. And when she said no, she didn't. To the extent that self-defense must be disproved in Texas, this court has held that in these instances, an essential element of a crime is considered to be all those things that the prosecutor must prove. It is our contention that in order for her to be inadmissible to the United States, they had to list the essential elements of aggravated assault in Texas and say, here's what they are, do you admit them, do you deny them? Even if she denies them without evidence, it's not a free and voluntary admission. To the extent that she raises self-defense, they should have read her the statute regarding self-defense because, again, the prosecutor had to prove that, not the defendant. They did not do that. She has not freely and voluntarily admitted these offenses. And that's the only issue before this Court today. Thank you very much. We thank both counsel for the argument.
judges: Siler , Rawlinson, Bybee